34617.  FRICKS *et al. v.* J. R. WATKINS COMPANY.

DECIDED MAY 16, 1953—REHEARING DENIED MAY 27, 1953.

*Wm. Gordon Mann,* for plaintiffs in error.

*Shaw & Shaw,* contra.

TOWNSEND, J. ■ Code § 103-205 provides as follows: "Any surety, guarantor, or indorser, at any time after the debt on which he is liable becomes due, may give notice in writing to the creditor, his agent, or any person having possession or control of the obligation, to proceed to collect the same from the principal, or any one of the several principals liable therefor; and if the creditor or holder refuses or fails to commence an action for the space of three months after such notice (the principal being within the jurisdiction of this State), the indorser, guarantor, or surety giving the notice, as well as all subsequent indorsers and all co-sureties, shall be discharged. No notice shall be considered a compliance with the requirements of this section which does not state the county in which the principal resides." It is to be observed that the surety is required only to give the creditor (a) notice to proceed to collect the debt from the principal, and (b) to state the county in which the principal resides. Thereafter, if the principal is within the jurisdiction of the State, and if the creditor fails to commence an action within three months after such notice, the surety will be discharged. It appears from the record here that the principal was within the jurisdiction of the State, as personal service was had upon him. That his residence was in another State, and was so stated in the notice, would not, under the terms of the Code section or the statutes from which it is condensed preclude the sureties from the benefit thereof, the principal being in fact within the jurisdiction of the court. It was error to sustain the general demurrer to the answers on this ground.

■ The language of the contract quoted in the statement of facts, supra, is sufficient to waive the notice to proceed against a principal, set up in the answer of the defendants, provided the statute authorizing this notice is one which can under the public

policy of this State be waived. Counsel for the plaintiff contends that Code § 102-106 applies. The provisions of this section are as follows: "Laws made for the preservation of public order or good morals cannot be done away with or abrogated by any agreement; but a person may waive or renounce what the law has established in his favor, when he does not thereby injure others or affect the public interest." It is contended by counsel for the plaintiff that this statute enunciates a law established in favor of sureties such as the defendants herein, and that therefore, under the provisions of Code § 102-106, the same may be waived. Whether or not Code § 103-205 providing for the notice may be the subject of specific anticipatory waiver on the part of a surety to a contract, has not been decided in this State. In *Watkins Co.* v. *Seawright*, 41 *Ga. App.* 617 (154 S. E. 293), and in *Overstreet* v. *W. T. Rawleigh Co.*, 75 *Ga. App.* 483 (43 S. E. 2d 774), it was held that the language in the contracts there considered was not such as to constitute a waiver, but neither of those cases passed on the question of whether or not language in a contract sufficiently explicit, such as we have here, would so operate.

It is well settled that the statute (Code § 103-205) is in the nature of a limitation of actions. *Sally* v. *Bank of Union*, 150 *Ga.* 281 (1) (103 S. E. 460); *Overstreet* v. *W. T. Rawleigh Co.*, supra; *Levy* v. *Cohen*, 4 *Ga.* 1. In the *Sally* case, in answer to a question certified by the Court of Appeals, as follows: "Do the provisions of section 3546 (§ 103-205) of the Civil Code affect the *contract* or go only to the *remedy?*" the Supreme Court held as follows (p. 281): "The provisions of section 3546 of the Civil Code do not affect either the nature, obligation, construction, or validity of the contract, but go only to the remedy. See *Vanzant* v. *Arnold*, 31 *Ga.* 210 (4), 213, where this view was expressed in the opinion, but where the decision of the question was not necessary to the disposition of the case. 'The indorser derives his right to be released from the statute', and not from anything contained in the contract." As is pointed out in *Traders Investment Co.* v. *Macon Ry. &c. Co.*, 3 *Ga. App.* 125 (59 S. E. 454), a case involving a waiver of exemption of wages from garnishment, the question as to whether a laborer could, by executory or prospective agreement in a promissory note or

contract, make such waiver is one of the public policy of the State. In *Bank of Jonesboro* v. *Carnes,* 187 *Ga.* 795, 798 (2 S. E. 2d 495, 130 A.L.R. 1) the following is held: "Statutes of limitation are considered as beneficial and resting on principles of a sound public policy, and as not to be evaded except by the methods provided therein; indeed, they are now termed statutes of repose, and are regarded as essential to the security of all men. . . They are intended not alone for the benefit of the party in whose favor they have run, but are also for the general public good." The *Traders Investment Co.* case, supra, in holding that a prospective waiver of garnishment exemption was unenforceable as against public policy relied in part upon the case of Moxley v. Ragan, 10 Bush 156 (19 Am. R. 61), a decision indicating that, while the right to plead the statute of limitations is a personal privilege, an agreement never to plead it would not be binding. The same decision was reached in *Miller* v. *Roberts,* 9 *Ga. App.* 511 (3) (71 S. E. 927), holding that the right to notice in order to obtain attorney fees on a note is a matter of public policy, and an anticipatory waiver thereof incorporated in the instrument sued on is unenforceable; and it was there pointed out that such waivers, if valid, would in time become incorporated in the printed provisions of all promissory notes, which would have the effect of annulling the provisions of the statute in their entirety.

The public policy of each state must rest upon its own constitution, laws, and interpretations of its laws by the courts of that state. The public policy of the several states may differ as among themselves, and may also differ within the law of the state itself as the lapse of time and change of habits changes the thinking of the people. For this reason, Com. ex rel. Department of Justice v. National Surety Co., 310 Pa. 108 (164 Atl. 788, 89 A.L.R. 564), and other cases from foreign jurisdictions cited by the defendant in error are not compelling authority contrary to the view here expressed. As has been previously pointed out, the statute here sought to be enforced is in the nature of a statute of limitations. The courts of this State have not held definitely whether a prospective waiver of such statute in the instrument upon which suit is brought would be valid, but it is strongly intimated in the cases above cited that such

waiver should not be effective. It is our opinion that the statute of limitations and statutes in the nature of a limitation of actions cannot, under the public policy of this State, be waived in advance.

■ Code § 103-102 provides: "The obligation of the surety is accessory to that of his principal, and if the latter from any cause becomes extinct, the former shall cease of course, even though it is in judgment." It appears from the record here that the petition was filed against Flavious C. Beaty and R. P. Fricks and J. A. Bobo as principal and sureties respectively; that personal service was had upon Beaty on June 28, 1952; that he interposed no defense; that on March 17, 1953, verdict and judgment were entered against the sureties alone, as follows: "We the jury find in favor of plaintiff J. R. Watkins Co. and against defendants R. P. Fricks and J. A. Bobo the sum of $1,206.28 principal and $186.46 interest to this date"; "Whereupon, it is ordered and adjudged that the plaintiff, the J. R. Watkins Company, have and recover of the defendants R. P. Fricks and J. A. Bobo $1,206.28 principal, $186.46 interest to date, future interest at 7% per annum, and $........ costs for use of officers of court." It thus appears that, although the principal was a party to the action, no judgment was rendered against him. As was stated in *Fricks* v. *Rome Mercantile Co.*, 49 *Ga. App.* 431 (175 S. E. 807): "Where the principal and his surety on a promissory note, which is joint and several on its face, are sued in the same action, and verdict and judgment are taken against the surety only, both the principal and the surety are discharged." The judgment is therefore contrary to law for this additional reason, since the verdict against the sureties alone had the legal effect of discharging them from any obligation they might otherwise have had.

*Judgment reversed. Gardner, P.J., and Carlisle, J., concur.*