JAMES J. FORD and BELL & GASKILL, plaintiffs in error, vs. ANDREW T. FINNEY, defendant in error.

One taking a bond for titles by assignment, under a contract to pay the purchase money due to the original vendor, may be compelled by a Court of Equity to perform his contract. It is not a parol promise to answer for the debt of another; nor is it a parol contract for the sale of land.

In Equity. In Fulton Superior Court. Demurrer. Decided by Judge WARNER. October Term, 1866.

On the 14th of September, 1865, Ford, Bray & Co., a copartnership of which James J. Ford, one of the plaintiffs in error, was a member, purchased of Bell & Gaskill, the other plaintiffs in error, a lot in the city of Atlanta, giving their three promissory notes therefor, due respectively the first of January, the first of April, and the fourteenth of August, 1866, and taking a bond for titles to be made by Bell & Gaskill when all the said notes should be paid off. Under this purchase, Ford, Bray & Co., went into possession of the premises, and then sold out to Ford & Finney, another copartnership, composed of the said James J. Ford and the defendant in error, Andrew T. Finney. Ford, Bray & Co. transferred to Ford & Finney the said bond for titles, and the latter firm undertook and agreed with the former to pay off the said notes to Bell & Gaskill. Under this arrangement, Ford & Finney entered into possession of the lot, and commenced building thereon. When the building was nearly completed, to-wit, on the 2d of January, 1866, Ford sold out his interest to Finney, transferring to him the bond for titles, and leaving him in the sole possession and ownership of the premises. Finney gave Ford, for his interest, about four hundred dollars, besides agreeing with him to pay off the said notes to Bell & Gaskill. After this, Finney obtained a policy of insurance on the building. The building was destroyed by fire, and the money due on the policy was collected by Finney.

Finney failed to pay anything upon the notes to Bell & Gaskill, and after they all matured, and two of them were placed in suit against Ford, Bray & Co., the makers, and threats had been made by Bell & Gaskill to sue on the third also, Ford filed his bill against Finney, (amending it subsequently so as to make Bell & Gaskill complainants with him,) in which he alleged the foregoing facts, and moreover, that Bell & Gaskill were able, ready and willing to execute to Finney good and sufficient titles in fee simple to said premises, upon the payment of said notes; that Ford had repeatedly requested and urged him to pay the same; but that he utterly failed and refused so to do.

The bill prayed that Finney might be decreed to specifically perform his contract with Ford by paying off and discharging said notes, and for discovery and general relief.

Finney, the defendant in the bill, demurred to it for want of equity, and because the contract set forth, not being in writing, was not such as a Court of Equity will enforce, and because the complainant Ford, did not show himself to be in a condition to perform the same on his part.

The Court sustained the demurrer and dismissed the bill. To this the complainants excepted.

COLLIER & HOYT, for plaintiffs in error.

HAMMOND & MYNATT, for defendant.

WALKER, J.

The very learned Judge who presided in this cause dismissed the bill on the grounds, as we understand, that the contract between Ford and Finney was such as could not be enforced, being obnoxious to the statute of frauds. *Code*, sec. 1952, *clause* 2. We think he erred. In the first place, we do not think Finney made any "promise to answer for the debt default or miscarriage of another." The contract, as we construe it, is this: Ford sells his interest in the city lot to Finney, and, in consideration of the written assignment of the title bond to Finney, he paid Ford four hunred dollars, and promised to pay to Bell & Gaskill thirty-eight hundred dollars more; that is, Finney purchases the lot, takes a bond for titles, and promises to pay thirty-eight hundred dollars in addition to the four hundred already paid to Ford. It is a simple contract of purchase and sale, and the only feature which distinguishes this from an ordinary contract is, that Finney promises to pay the thirty-eight hundred dollars to Bell & Gaskill instead of to Ford, or Ford, Bray & Co. This is the debt of *Finney*, and this he promises to pay. He is liable to pay, although his promise is not

in writing. He has received the consideration, and Ford proposes to make title and compel payment. Is there anything unreasonable in this? This is no effort by the vendor to enforce specific performance of a *parol* contract for the sale of lands. A title bond was made to Ford, Bray & Co., and assigned to and accepted by Finney, who went into possession of the land. In order to prevent circuity of action, and to bring all the parties at interest before the Court, so that full and complete justice may be done, this bill should be maintained. Why compel Bell & Gaskill to collect the money out of Ford, Bray & Co., and then Ford, Bray & Co. have to sue Ford & Finney, and then Ford sue Finney, when the rights of all the parties can be readily adjusted under this bill?

It was insisted that the complainants have a complete and adequate remedy at law. Perhaps, under the *Code, Section* 3014-15, the parties might have accomplished at law what they propose by their bill; but, according to *Section* 3028, a *mere* privilege to a complainant to sue at law, or the existence of a common law remedy, shall not deprive Equity of jurisdiction. The remedy at law must be as complete and effectual as the equitable relief, in order to oust a Court of Equity of jurisdiction. We think, in this case, the remedy at law was not as complete as in equity. Taking the allegations in the bill to be true, we think Equity can do more complete justice between all the parties than law, and that the bill should have been sustained, and the rights of all the parties settled under it.

Judgment reversed.